# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **BRODERICK PHILLIPS** | **CIVIL ACTION NO. 3:14CV3109 - SEC P** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **KEVIN COBB, ET AL.** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion for Summary Judgment, [doc. # 17], filed by Defendants Sheriff Kevin Cobb, Asst. Warden Michael Emfinger, and Warden Chad Lee. Plaintiff does not oppose the Motion. For reasons stated below, it is recommended that the Motion be **GRANTED**.

## Background

*Pro se* Plaintiff Broderick Phillips,[1] an inmate in the custody of Louisiana's Department of Corrections and housed at the Franklin Parish Detention Center ("FPDC"), filed this civil rights Complaint pursuant to 42 U.S.C. § 1983 on October 24, 2014. [doc. # 1]. He claims that Defendants violated and were continuing to violate his First Amendment right to freedom of religion by denying him and his fellow Muslim inmates the right to perform their religious obligations. *Id.* at 3-4. Phillips also alleges that he is being denied access to the courts due to the deficient law library and inadequate law clerk at the facility. *Id.* at 4; [doc. # 10, p. 5]. Additionally, Phillips claims that he was subject to the use of excessive force when Sheriff Cobb pushed him while Phillips was wearing leg irons. [doc. # 10, p. 3]. He seeks monetary damages

---

[1] Plaintiff proceeds *in forma pauperis*. [doc. # 4].

and a transfer to an institution where he can practice his religion. *Id.* at 9.

Defendants filed the instant Motion for Summary Judgment on February 26, 2016. [doc. # 17]. They argue that they are entitled to summary judgment because (1) Plaintiff failed to exhaust his available administrative remedies prior to filing suit, (2) Plaintiff was not denied the right to practice his chosen religion, (3) Plaintiff was not denied access to the courts, and (4) Plaintiff was not subject to the use of excessive force. *Id.*

The matter is now before the Court.[2]

## **Law and Analysis**

### I.      **Summary Judgment Standard**

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

---

[2] The court notes that Plaintiff did not file an opposition to the motion for summary judgment, and thus, the motion is unopposed. See Notice of Motion Setting [doc. # 18]. However, a non-movant's failure to oppose summary judgment does not mean that the court is compelled to grant the motion out of hand. *Monroe v. Melder*, 247 F.3d 241 (5th Cir. 2001) (unpubl.) (citation omitted). Rather, the movant still must discharge its burden of showing that there is no genuine dispute of material fact, and that it is entitled to judgment as a matter of law. *McDaniel v. Sw. Bell Tel.*, 979 F.2d 1534 (5th Cir. 1992) (unpubl.); *Alsobrook v. GMAC Mortgage, LLC*, 541 F. App'x 340, 342 (5th Cir. 2013) (unpubl.). If the movant does not meet its burden, then the court must deny the motion. *See John v. State of La. (Bd. of Trustees for State Colleges & Universities)*, 757 F.2d 698, 708 (5th Cir. 1985).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[3]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th

---

[3] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

3

Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[4] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## II.    Failure to Exhaust Available Administrative Remedies

### A.    <u>Exhaustion Principles</u>

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citations omitted). All

---

[4] I.e., beyond doubt.

4

"available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. App'x. 933, 934 (5th Cir. Aug. 20, 2009) (unpubl.) (citing *Woodford*, 548 U.S. at 89-93). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id.*

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). Exhaustion also applies to claims brought against defendants in their official and/or individual capacities. *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. App'x. 564 (5th Cir. Sept. 29, 2003) (unpubl.).

Exhaustion is an affirmative defense; thus, the burden is on the defendant to establish that the plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). If a defendant meets this burden, a court has no discretion to excuse the plaintiff's failure. *Gonzales v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

B.    The FPDC had an Available Administrative Remedy Procedure

Defendants contend that Plaintiff has yet to initiate even the first step of FPDC's administrative remedy procedure ("ARP").  [doc. # 26-1]. In support, they present evidence showing that there is indeed a two-step ARP procedure that inmates at FPDC must use to resolve

5

complaints. [doc. # 17-4]. Under the ARP, an inmate must first complete a grievance form to the Assistant Warden. *Id.* at 1. If an offender is not satisfied with the Assistant Warden's response, he must appeal to the Warden. *Id.*

      C.    <u>Phillips Failed to Exhaust All Available Administrative Remedies</u>

In support of their motion for summary judgment, Defendants adduced evidence that Warden Lee "never received any ARP Form from Plaintiff Broderick Phillips" regarding his complaints in this lawsuit. [doc. # 17-4, p. 2]. As Plaintiff did not file a response to Defendants' motion, he necessarily did not produce any evidence to controvert Defendants' showing. Although in his complaint, as twice amended, Plaintiff stated that he filed a grievance with the facility and then with the Department of Corrections, his representations are neither sworn, nor made under penalty of perjury.[5] [doc. # 17-3, p. 6]. It is manifest that unsworn statements do not suffice to create disputed issues of material fact which justify a trial. *Oglesby v. Terminal Transp. Co., Inc.*, 543 F.2d 1111, 1112 (5th Cir. 1976); *see also Teixeira v. Gregg Cnty. Jail*, 74 F. App'x 388, 389 (5th Cir. 2003) (inmate's unsubstantiated assertion that he filed an administrative appeal is insufficient to sustain his evidentiary burden under Rule 56) (citation omitted).  Moreover, "in the face of the defendant's properly supported motion for summary judgment, the plaintiff [can]not rest on his allegations . . . to get to [trial] without any significant

---

    [5] Federal law permits unsworn declarations to substitute for an affiant's oath if the statements contained therein are made "under penalty of perjury" and verified as "true and correct."  *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 382 n.2 (5th Cir. 2013) (citing 28 U.S.C. § 1746).

probative evidence tending to support the complaint. " *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citations and internal quotation marks omitted).[6]

      D.     <u>Remedy for Failure to Exhaust</u>

The plain language of the PLRA precludes any further action on Plaintiff's claims until he has fully exhausted the administrative remedy procedure. Dismissal is the remedy, and it is typically without prejudice. *See e.g., Plaisance v. Cain*, 374 Fed. Appx. 560, 561 (5th Cir. 2010); *Cooper v. Quarterman*, 342 Fed. Appx. 12, 13 (5th Cir. 2009) (modifying dismissal for failure to exhaust to reflect that it was without prejudice).

Although dismissal for failure to exhaust administrative remedies is typically without prejudice,[7] the Court is authorized to dismiss Plaintiff's Complaint with prejudice with respect to his right to re-file it *in forma pauperis* ("IFP"):

> By choosing to file and pursue his suit prior to exhausting administrative remedies as required, [plaintiff] sought relief to which he was not entitled–that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing [plaintiff's] action with prejudice for purposes of proceeding IFP.

*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 216 (2007)). The foregoing approach is appropriate here.

**III.    No Denial of Right to Practice Chosen Religion**

---

    [6] Furthermore, even if the court *were* to credit plaintiff's allegations, the same result would obtain because, according to plaintiff, he sent a second grievance to the DOC rather than appealing the denial to the warden.

    [7] *See, e.g., Cooper v. Quarterman*, 342 Fed. App'x. 12, 13 (5th Cir. 2009).

Even assuming for purposes of this report and recommendation that Phillips had exhausted his administrative remedies, summary judgment would still be appropriate in this case; therefore, the undersigned will analyze the remainder of the Defendants' motion.

Phillips argues that Defendants have impeded his free exercise of religion under the First Amendment by preventing him from attending congregational "jumu'ah" religious services, receiving a prayer rug or Kofi and participating in Ramadan. [doc. # 10-1, p. 1]. Defendants counter that valid penological objectives, including security and staff limitations justify FPDC's policies, and that Phillips has alternative means of practicing his religion. [doc. 17-2, p. 4-6]. To avoid redundancy, the Court will state the law applicable to Plaintiff's claims and examine each claim under the applicable law.

A.    First Amendment

The Free Exercise Clause of the First Amendment to the United States Constitution requires noninterference by the government with the religious beliefs and practices of individuals. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). A prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). A prison regulation which impinges on an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The court must consider four factors in deciding in determining the reasonableness of the regulation: (1) whether a valid and rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact of the

8

accommodation on prison guards, other inmates and the allocation of prison resources generally; and (4) whether there are "ready alternatives" to the regulation in question. *Turner*, 482 U.S. at 89–90. Prison officials are afforded great deference in making decisions regarding jail security. *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002); *see also Scott v. Miss. Dep't of Corr.*, 961 F.2d 77, 80–81 (5th Cir. 1992) (explaining that a court need not "weigh evenly, or even consider, each of these factors," as rationality is the controlling standard).

Plaintiff first complains that "Muslim inmates are not allowed to gather in congregation" to perform religious prayers. [doc. # 10, p. 3]. In Plaintiff's deposition he states that he is able to pray inside his dorm with three to four Muslims. [doc. # 17-3, p. 2-4]. However, he complains that he has been restricted from going outside of the dorm to pray with other Muslims. *Id.*

Warden Lee testified that inmates at the facility are "allowed to congregate, pray, worship, and study with other Muslims in the same dorm, and have been allowed to do so during the entirety of Plaintiff Broderick Phillip's period of incarceration." [doc. # 17-4, p. 2]. The facility does not currently have any formal Muslim services because they do not have an Imam to lead the services. *Id.* Defendants contend that "at no time has Plaintiff identified an Imam among the prison population or otherwise available who could have led the prayers and preached a sermon." [doc. # 17-2, p. 4]. Warden Lee also testified that he is unaware of any local Imams and that the previous Imam who led Muslim services at the detention center stopped volunteering approximately four or five years ago. [doc. # 17-4, p. 2].

With regard to the first prong of the *Turner* test, Plaintiff has not alleged that prison officials have prohibited him from practicing his religion. Indeed, according to the available evidence, Plaintiff has never been prohibited from practicing his religion. Defendants submitted

evidence that the prison did not hold formal Muslim services because the prison lacks a local volunteer Imam to lead the services. "[S]taff and space limitations, as well as financial burdens, are valid penological interests." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

The second and fourth prongs of the *Turner* test, address whether or not "alternative means" of practicing his religion have been made available to the plaintiff. In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman*, 369 F.3d at 861; *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004). Plaintiff has not claimed that he was denied the right to practice his religion.

In *O'Lone v. Estate of Shabazz*, the inmate-plaintiffs complained that they were not allowed to attend the weekly Muslim congregational service held on Friday evenings because of their assignments to work details outside the main prison grounds. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 345-46 (1987). The Supreme Court considered the evidence supplied by the prison administration regarding security needs, rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion. *Id.* The Court then noted that the plaintiff-inmates were not deprived of all forms of religious exercise. *Id.* at 352. Based upon these facts, the Supreme Court held that the "ability on the part of [the inmates] to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.*

The record demonstrates that the prison policies at issue here are logically connected to legitimate penological concerns of staff limitations and that there are no obvious or easy alternatives. The summary judgment evidence shows that despite being denied the ability to congregate with other Muslims for religious services with an Imam, Phillips retains the ability to participate in alternative means of exercising his religious beliefs, including the ability to worship in his dorm using religious materials. *See O'Lone*, 482 U.S. at 351–52 (upholding a regulation that prevented Muslim prisoners from attending Friday Jumu'ah services, and recognizing that although there were "no alternative means of attending Jumu'ah [since] respondents' religious beliefs insist that it occur at a particular time," inmates were "not deprived of all forms of religious exercise, but instead freely observe a number of their religious obligations"); *see also Turner*, 482 U.S. at 90 ("Where other avenues remain available for the exercise of asserted rights, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation.") (internal quotation marks, citations, and alterations omitted); *see also Freeman*, 369 F.3d at 861 ("The pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith.").

Next plaintiff complains that he is "not allowed to receive a prayer rug" and "not allowed to receive or wear a Kofi." [doc. # 10, p. 3]. Defendants contend that Plaintiff is welcome to receive a prayer rug and Kufi, but that no prayer rug has been received by nor turned away by the facility. [docs. # 17-2, p. 4; # 17-4, p. 3]. Plaintiff claims in his complaint that someone

ordered him a prayer rug and Kufi; however, Plaintiff has failed to submit any evidence as to this claim.[8]

Warden Lee testified that "Muslim inmates are allowed to wear Kufis while inside the dorms," although "[t]he facility does not allow inmates to wear head coverings of any kind outside of the dorms due to security concerns." [doc. # 17-4, p. 3]. The Fifth Circuit Court of Appeals applied the standard set forth in *Turner* to inmates' claims that prison officials, among other things, refused to allow them to wear Kufi caps outside of the prison chapel and their cells. *Muhammad v. Lynaugh*, 966 F.2d 901, 902 (5th Cir. 1992). The court considered evidence introduced at a hearing that the prison regulations prohibited inmates from wearing Kufi caps in the prison day rooms and other areas because inmates could hide weapons such as shanks and razor blades inside the caps. *Id.* at 902. Applying the standard in *Turner*, the court held, based on the evidence introduced at a hearing, that the prison's rule bore a reasonable relationship to the legitimate penological interest of prison security and noted that other circuits had reached the same conclusion. *Id.* (citations omitted). Here, Defendants cite the same penological safety concerns as the prison officials in *Muhammad*. Thus, Phillips does not have a First Amendment right to wear a Kufi at times or in areas not permitted by prison rules. *Id.*

With regard to the dietary complaints during Ramadan, Plaintiff's claim fares no better. Plaintiff complains that after fasting, he is only given enough food for one meal and not enough to make up for the meal he missed during fasting. [doc. # 10, p. 4]. Dietary issues are clearly related to legitimate penological interests in providing proper nutritious meals to all the prisoners without undue cost. *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007) (holding that prison

---

[8] Plaintiff also concedes that if he were to order a prayer rug today he could get one. [doc. # 17-3, p. 10].

12

officials' failure to provide kosher meals did not violate inmates free exercise rights). The Fifth

Circuit has held that the first factor in the *Turner* test, whether there is a rational relationship

between the regulation and the legitimate government interest advanced, is the controlling

question, and the other factors merely help a court determine if the connection is logical. *Scott v.*

*Miss. Dep't of Corr.*, 961 F.2d 77, 81 (5th Cir. 1992) (commenting that neither *Turner* nor

*O'Lone* require courts to weigh evenly, or even consider the other three factors). Thus, the

dietary complaints are clearly frivolous under established Fifth Circuit and Supreme Court

jurisprudence.

According to the pleadings, Phillips admits that he was provided an avenue to exercise

his religious beliefs. He fails to show that the FPDC policies are unreasonable or that he was

denied an opportunity to exercise his religious beliefs in violation of the First Amendment.

B.      Equal Protection

To the extent that Plaintiff implies that his Equal Protection rights were violated under

the Fourteenth Amendment with respect to his ability to practice his religion in a manner similar

to that permitted by Christians incarcerated at FPDC, such a claim likewise lacks merit. This is

so because, "[t]o succeed on his equal protection claim, [plaintiff] must prove purposeful

discrimination resulting in a discriminatory effect among persons similarly situated."

*Muhammad*, 966 F.2d at 903 (citing *McCleskey v. Kemp*, 481 U.S. 279 (1987)).

"The Equal Protection Clause directs that 'all persons similarly circumstanced shall be

treated alike.'" *Plyler v. Doe*, 457 U.S. 202 (1982) (citation omitted). However, things that are

different in fact or opinion do not have to be treated as if there were no difference. *Id.* To

succeed on an equal protection challenge, a plaintiff must prove purposeful discrimination

13

resulting in a discriminatory effect among persons similarly situated. *McCleskey v. Kemp*, 481 U.S. 279 (1987). A "discriminatory purpose" implies that a particular course of action was selected "at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). A plaintiff must prove specific acts that support a claim of discrimination; his personal belief that he was subject to such discrimination is insufficient to prove an equal protection violation. *Id.* "To maintain his equal protection claim independently of his free exercise claim, [a plaintiff] must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)).

The Fourteenth Amendment requires that all persons similarly situated shall be treated alike, but it does not demand "that every religious sect or group within a prison-however few in numbers-must have identical facilities or personnel." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). Again, prison administrators are obliged only to provide inmates with "reasonable opportunities . . . to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments." *Id.* Like the plaintiffs in *O'Lone v. Estate of Shabazz*, this plaintiff has not, nor can he show that he has been deprived of all means of religious expression.

C.    RLUIPA Claim

Liberally construed, Plaintiff's complaint also states a viable claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §2000cc *et seq*. The RLUIPA was passed by Congress in 2000 to provide for "a broad protection of religious exercise, to the

maximum extent permitted by the terms of [the] Act and the Constitution." 42 U.S.C. §

2000cc–3(g). The relevant section of the RLUIPA states:

> (a) General rule
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-l. The standard under RLUIPA "poses a far greater challenge than does

*Turner* to prison regulations that impinge on inmates' free exercise of religion. *Freeman v. Texas*

*Dept. of Criminal Justice*, 369 F.3d 854, 858 n.1 (5th Cir. 2004).

Plaintiff must demonstrate that the government practice complained of imposes a

"substantial burden" on his religious exercise. *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir.

2004). This requires the Court to answer two questions: (1) Is the burdened activity a "religious

exercise," and if so (2) is the burden "substantial?" *Id.* The plaintiff has the burden of persuasion

on these two elements. *Id.*; citing to 42 U.S.C. § 2000cc-s; 146 Cong. Rec. S7776 (July 27,

2000). The government then has the burden of persuasion that the application of its substantially

burdensome practice is in furtherance of a compelling governmental interest and is the least

restrictive means of furthering that interest. *Id.*

RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not

compelled by, or central to, a system of religious belief." *Adkins*, 393 F.3d at 567. Plaintiff does

15

not argue that congregational prayer outside the dorm with more than four other Muslims is an important element of the free exercise of his religion.

A substantial burden on religious exercise is determined as follows:

For purposes of applying RLUIPA in this circuit, a government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs. [ ] The effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs.

On the opposite end of the spectrum, however, a government action or regulation does not rise to the level of a substantial burden [ ] if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.

*Adkins*, 393 F.3d at 569–570.

Plaintiff does not assert that the denial of congregational services with more than four other Muslin a private room amounts to a "substantial burden" because it modifies his religious behavior. Likewise, Plaintiff's claim that he is not supplied with a second meal after fasting during Ramadan does not amount to a "substantial burden" on Plaintiff's religious exercise. Thus, the court finds that Plaintiff has not met his burden of persuasion that the denial of congregational services with more than four other Muslims and his denial of additional meals after fasting are a substantial burden on the Plaintiff's free exercise of his religion.

However, Plaintiff's claim concerning his ability to wear a Kufi outside of his dorm is a substantial burden under RLUIPA. *See Ali v. Stephens*, 69 F.Supp.3d 633, 643–44 (E.D. Tex. 2014) (substantial burden imposed by rule prohibiting prisoners from wearing religious headgear throughout prison). Warden Lee testified that,

16

> The facility does not allow inmates to wear head coverings of any kind outside of the dorms due to security concerns–inmates are known to use head coverings to conceal contraband such as controlled dangerous substances and small makeshift weapons for personal use or for conducting illicit transactions; the colors and markings on head coverings are also known to be used by inmates to signify security threat group affiliations.

[doc. # 17-4, p. 3]. In the instant case, it is undisputed that the wearing of a Kufi as desired by Phillips is a religious exercise. Furthermore, the Defendants do not seriously challenge the contention that FPDC policies impose a substantial burden on the religious exercise. Instead, the Defendants seek to demonstrate that the restrictive policies regarding head coverings further compelling governmental interests, and are the least restrictive means of furthering those compelling governmental interests.

FPDC rules do not absolutely forbid the wearing of the Kufi. On the contrary, Plaintiff Phillips and other Muslim prisoners are permitted to wear the Kufi in their own dormitory. The rule does forbid the prisoner from wearing his Kufi while outside of his dorm. Given the State's compelling interest in the safety and security of prisoners and prison staff, requiring a Muslim prisoner to remove his Kufi outside of his dormitory appears to qualify as the least restrictive way of furthering that compelling interest. Accordingly, no RLUIPA violations have been shown, and Defendants are entitled to summary judgment dismissing Plaintiff's claims under that statute.

## IV.    Access to the Courts

Plaintiff claims FPDC's law library and the law clerk are inadequate. Prisoners have a constitutional right of meaningful access to the courts. *Degrate v. Godwin*, 84 F.3d 768, 768–69 (5th Cir. 1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). However, this

17

constitutional guarantee is not without limitation. *Lewis v. Casey*, 518 U.S. 343 (1996) (quoting *Turner*, 482 U.S. at 89).

In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court reviewed its holding in *Bounds v. Smith*, 430 U.S. 817, (1977) which is the source of a prisoner's constitutional right to "meaningful access to the courts." While the Supreme Court reaffirmed a prisoner's right of access to the courts in *Lewis*, the Court limited the parameters of *Bounds* and set forth a standard to be applied when determining whether to grant relief for an access to the courts violation. In so holding, the Court noted that a prisoner must show an actual injury, explaining that this requirement is derived from the doctrine of standing. *Lewis*, 518 U.S. at 351. The Court used the analogy of a prisoner who is denied access to that of a healthy prisoner who has been deprived of medical treatment. In both cases, neither the access deprived prisoner nor the healthy prisoner have sustained constitutional injury, and thus, are not entitled to relief under Section 1983. The Court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). Application of the actual injury requirement to the instant case supports a finding that Plaintiff's claims are frivolous. Clearly, Plaintiff has not satisfied the "actual injury" requirement. Plaintiff has failed to demonstrate that he lost the right to commence, prosecute or appeal any suit as a result of the alleged denial of access to the law library. Furthermore, Plaintiff's complaint in this Court reveals on its face that

18

he was able to clearly present his claims to this Court. Thus, he has failed to state any actual injury. Accordingly, Plaintiff's access to the courts claim should be dismissed with prejudice as frivolous.

## V.     Excessive Force

Plaintiff claims that he was pushed along by Sheriff Cobb while walking in leg irons. [doc. # 10, p. 2-3]. Plaintiff states that Sheriff Cobb grabbed him by his jumper and dragged him through the Courthouse resulting in a scrape on his ankle from a leg iron. [doc. # 17-3, p. 8-9]. The Supreme Court, in *Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed.2d 156 (1992), held that inmates raising allegations of excessive force must show that the force used was malicious and sadistic for the very purpose of causing harm rather than in a good faith effort to restore discipline; the Court also noted that the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson*, 112 S.Ct. at 999.

In accordance with this decision, the Fifth Circuit has identified five factors which should be considered in determining whether an unnecessary and wanton infliction of pain was done in violation of an inmate's right to be free from cruel and unusual punishment. These factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). It should be noted that not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates a prisoner's

19

constitutional rights. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033 (1973) (cited with approval in *Hudson*, 112 S. Ct. at 1000).

With reference to the first factor, the extent of the injury suffered, it is important to note that in Eighth Amendment cases involving claims of excessive use of force, the Fifth Circuit has expressly held that the claimant must show injuries that are more than *de minimis*, even if not "significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921 (5th Cir. 1999); *Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006). In *Hudson v. McMillian*, 503 U.S. 1, 7 (1992), the Supreme Court held that the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. *See also Jackson v. Culbertson*, 984 F.2d 699 (5th Cir. 1993).

For instance, in *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997) Plaintiff's injuries were found to be *de minimis*. In that case, the plaintiff suffered a sore, bruised ear which lasted for three days and did not require medical attention, an injury which was held to be *de minimis*. *Id.* By contrast, in *Gomez*, the plaintiff suffered cuts, scrapes, and contusions to the face, head, and body as a result of being knocked down, repeatedly punched in the face, and kicked in the head. *Gomez v. Chandler*, 163 F.3d 921, 925 (5th Cir. 1999). The Fifth Circuit stated, "we cannot say as a matter of law that Gomez's injuries were no more than *de minimis*." *Id.*

Defendants contend that Phillips fails to establish a valid claim under the Eighth Amendment because he does not allege that his injuries are more than *de minimis*. In this case, the evidence shows only that Phillips had a scrape on his ankle. Such an injury is plainly more akin to the bruised ear at issue in *Siglar* than the multiple cuts, bruises, and contusions suffered

by Plaintiff in *Gomez. See also Raley v. Fraser*, 747 F.2d 287, 289 (5th Cir. 1984) (holding that an arrest that resulted in bruised arms, a scraped face, and welts on the wrists of the arrestee was not so gross as to make § 1983 applicable); *Wesson v. Oglesby*, 910 F.2d 278, 281–82 (5th Cir. 1990) (Although plaintiff complained of severe back pain after an alleged beating, a medical examination revealed only a small abrasion); *McCullough v. Quarterman*, 2008 WL 5061512, at *9 (S.D. Tex. Nov. 24, 2009) (Inmate's slightly swollen face and four scratches were *de minimis* injuries insufficient to establish a constitutional violation).

The Court is thus compelled to find that there is no genuine dispute as to any material fact, that Defendants are entitled to judgment as a matter of law, and that Plaintiff's claims should be dismissed.

## Conclusion

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 17] filed by defendants Sheriff Kevin Cobb, Asst. Warden Michael Emfinger, and Warden Chad Lee be **GRANTED**, and that plaintiff's claims be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, Monroe, Louisiana, this 4th day of April, 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE